C. A. STAVNOW, Respondent, v. WILLIAM KENEFICK, Appellant.

### Kansas City Court of Appeals, February 20, 1899.

1. **Bills and Notes**: ACCEPTANCE: NON-TRADING COPARTNERSHIP: BURDEN OF PROOF. No member of a non-trading copartnership has authority to bind his copartners by a negotiable bill, note or acceptance in the firm name even for a debt which the firm owes, unless he has express authority therefor, or the giving of such instrument is necessary to carry on the firm business, or is usual in similar partnerships, and the burden is upon the holder to prove such authority, necessity or usage.

2. **Partnership**: TRADING AND NON-TRADING. If a partnership contemplates the periodical or continuous or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership, otherwise it is not.

3. **Bills and Notes**: ACCOUNT: PARTNERSHIP. This case is distinguished from Hahn v. Kenefick, 48 Mo. App. 518, since it is based upon acceptance executed in the firm name.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

KARNES, HOLMES & KRAUTHOFF for appellant.

(1). There is no evidence that the partnership was of such a nature that the issuance of negotiable paper was necessary to its existence, or was customary with partnerships engaged in similar occupations; or that this firm was accustomed to issue negotiable paper. Under these circumstances the act of Gleeson was a fraud upon Kenefick, was wholly unauthorized, and Kenefick is not liable therefor. This question may be considered fairly well settled in this state; it has been decided by the supreme court: Deardorf v. Thacher, 78 Mo. 128; the St. Louis Court of Appeals: Bank v. Snyder, 10 Mo. App. 211; and by this court: Webb v. Allington, 27 Mo. App. 559, 568; Randall v. Lee, 68 Mo. App. 561. The foregoing doctrine has universal recognition. It has been applied, *inter alia*, to lawyers: Forster v. Mackreth, L. R. 2. Exch. 163; sawmill operators and manufacturers of lumber: Bank v. Noyes, 62 N. H. 35; tunnel diggers: Gray v. Ward, 18 Ill. 32; general contractors and builders: Snively v. Matherson, 12 Wash. 88; paving, grading and curbing contractors: Harris v. Mayor etc., 73 Md. 22; railroad contractors: Brettel v. Williams, 4 Exch. 623.

A. M. ALLEN and W. F. ALLEN for respondent.

One partner has power to bind the firm by commercial paper (even though it be a non-trading partnership) when the giving of such instrument was necessary to carry on the firm business within the scope of the business of that firm, or is usual in similar partnership. Galvin v. Walker, 14 Lea, 643; Johnston v. Dutton, 27 Ala. 245; Kimbro v. Bullitt, 22 Howard, 256; Bank v. White, 30 Fed. Rep. 412.

GILL, J.—The purpose of this suit is to charge Defendant Kenefick with the amount of three acceptances (negotiable in form) purporting to have been executed in March, 1889, by the alleged copartnership of Kenefick & Gleeson, and due according to their face in the April, following. The instruments were executed by Gleeson in the name of Kenefick & Gleeson, and were given in payment for certain supplies furnished to Gleeson while grading and macadamizing one of the county roads leading into Kansas City. Plaintiff's claim for recovery is based on the theory that Kenefick was a copartner of Gleeson in doing the work just mentioned. Defendant denies that any such partnership existed at the time Gleeson executed the paper; and moreover if it did exist that even then Gleeson had no authority to bind defendant by the execution of the acceptances. The issues were tried by the court, sitting as a jury, resulting in a judgment for plaintiff and defendant appeals.

The principal and decisive point in the case is, whether, admitting the existence of a partnership at the time between Gleeson and defendant, the latter can be held for the payment of the acceptances. To say the least, the evidence was quite convincing that Kenefick and Gleeson were copartners in both the making and performance of the contract for

the macadamizing, and that they were in fact partners when Gleeson signed the obligations in question.

From an examination of the instructions given and re-fused, it appears the court decided the case on the theory that if defendant was a partner of Gleeson in doing the work and at the time the latter executed the paper, and if said acceptances were given for supplies furnished to the firm for said work, then, without more, defendant was liable in this action. As applied to the facts here this was an erroneous theory of law. At most, Kenefick & Gleeson was a non-trading copartnership, and the rule is well settled in this state, that no member thereof has authority to bind his copartner by a negotiable bill, note, or acceptance executed or drawn by him in the firm name, "not even for a debt which the firm owes, unless he has express authority therefor, from his copartner, or unless the giving of such instrument is necessary to the carrying on of the firm business, or is usual in similar partnerships, and that the burden is upon the holder of the note who sues upon it to prove such authority, necessity or usage." Deardorf v. Thacher, 78 Mo. 128; Randall v. Lee & Randall, 68 Mo. App. 561; 1 Bates on Partnership, sec. 343. "It makes no difference," says the author last cited, "that the consideration of the note was applied to the benefit of the firm or to pay a debt owed by it. If giving a note is outside the scope of the business, the note is not binding unless authority to issue it was given or is implied from the usage of the firm or the business."

It's a question of agency. Each partner is the agent of the firm to carry on and transact its business *in the ordinary way.* In the transaction of the business of a mercantile, or trading partnership, it is well understood that negotiable obligations are customarily executed and issued, and hence each partner is vested with power to sign the partnership name

*Margin notes:*
BILLS and notes: acceptance: non-trading copartnership: burden of proof.

PARTNERSHIP: trading and non-trading.

thereto.    In non-trading copartnerships, however, it is no part of the firm business to execute such paper, and hence a member thereof, has no power, as the agent of the firm (and by reason of the partnership alone) to sign the firm name thereto.    The difference between the two classes of partnerships is thus stated.    "If the partnership contemplates the periodical or continuous or frequent purchasing, not as incidental to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership, otherwise it is not."    1 Bates on Part., sec. 327.

Manifestly then Kenefick & Gleeson was not a trading partnership while contracting for and doing the grading and macadamizing of the Jackson county road.    Neither of said partners then had the authority to bind the firm by the execution of negotiable paper, unless it should be shown that authority therefor was previously given by the other partner or knowing thereof he subsequently assented thereto.

If this was a suit for the price of the supplies furnished (and for which the acceptances were given) quite a different question would be presented; it would then bear
BILLS and notes: a close analogy to the case of Hahn v. Kenefick
account: part-
nership.       & Gleeson, 48 Mo. App. 518.    But this action is based on the *acceptances* executed in the name of the firm, and it must therefore be determined on the validity or invalidity of that paper.    If the plaintiff can prove that the execution of said acceptances was authorized or assented to by Kenefick, the contesting partner, then the firm (and therefore each partner) should be held therefor, otherwise not.

It results then that the judgment must be reversed and cause remanded.    All concur.