## THIRD NATIONAL BANK OF SEDALIA, Appellant, v. D. A. FAULTS & COMPANY and J. C. BEEDY, Respondents.

**Kansas City Court of Appeals, December 4, 1905.**

1. **PARTNERSHIP:** Non-Trading: Commercial Paper: Ratification. The partners of a non-trading firm have no implied power to bind each other by commercial paper, and the parties seeking to hold the members must show previous authorization or subsequent ratification.

2. ——: ——: ——: ——: Instructions. Instructions relating to a subsequent ratification are held to present fully all phases of plaintiff's case.

3. ——: ——: ——: ——: ——. Certain instructions commented upon are found to be without contradiction.

4. ——: ——: ——: ——: ——: Custom. Where a party is to be held a member of a non-trading partnership by reason of usage, it must be the same usage that prevails in the business community; and where the evidence shows that though non-trading firms made notes yet they were signed by the individual members, a party cannot be held by that usage unless he signs the note.

5. ——: ——: ——: ——: ——. An instruction authorizing a partner of a non-trading firm to act as the manager and conduct the firm's business does not authorize him to sign notes, since that is not within the firm's business; and an instruction substantially given in others is properly refused.

6. ——: ——: ——: Evidence. Certain evidence reciting a conversation between a member of a non-trading firm and the officer of a bank is held properly withdrawn, since it was hearsay; but a certain other conversation between members of the firm and a bank cashier as to whether such member and a third party, without mention of the party sought to be held, could get money, is admissible, though between the conversation and obtaining the money there was a change of cashiers.

7. **TRIAL PRACTICE:** Communication: Jury: Discretion: Appellate Practice, Where a remark touching the liability of a party is made to a witness in the presence of members of the jury without improper purpose, the appellate court will not interfere with the discretion of the trial court in refusing to grant a new trial on such ground.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

AFFIRMED.

*J. T. Montgomery* for appellant.

(1) There is no pretension that the plaintiff had notice before the notes sued on were executed by D. A. Fults & Company of the agreement between Beedy and co-partners, as to the manner in which they should raise the necessary capital for the firm of D. A. Fults & Co. to engage in the mail business. Therefore all of the evidence of Beedy and the two Fults concerning their private partnership agreement was inadmissible, and the court erred in admitting such evidence over the objections of the plaintiff. Bates v. Forcht, 89 Mo. 126. (2) Plaintiff's sixth instruction should have been given. Where one partner has knowledge that the co-partners have used the firm name on promissory notes for their own benefit, or the benefit of the firm, and fails within a reasonable time to repudiate the transaction, he is held in law to have ratified it, and is bound by it. Bates on Partnership, sec. 367; Rauben v. Cohn, 48 Cal. 545; Roberts v. Barrow, 53 Ga. 314; Sweet v. French, 2 Cush. 309; Hayner v. Craw, 79 Mo. 293. (3) The trial court erred in refusing plaintiff's eighth instruction, where by agreement the management of the firm's business is given to one of the partners, such partner has by implication the power to perform the duties necessarily incident to the business according to the ordinary and usual course. Morse v. Rickmond, 97 Ill. 302; Seaman v. Escheman, 57 Wis. 547; Casey v. Corver, 42 Ill. 225; Deardorf v. Thacher, 78 Mo. 129; Smith v. Sloan, 37 Wis. 285; Bank v. White, 30 Fed. 412. (4) The giving of defendant's third instruction was error, because the instruction withdraws from the consideration of the jury the evidence of Dalby and Latimer, to the effect that

D. A. Fults told them that Beedy was a partner and a member of the firm of D. A. Fults & Co., which evidence was admissible, when taken with the other evidence submitted to prove partnership. (5) The court erred in giving defendant's seventh and eighth instructions, because these two instructions are inconsistent and diametrically opposed to each other. (6) The court erred in admitting the evidence of D. A. Fults and J. A. Fults over the objections of the plaintiff, as to the conversation they had with R. H. Moses, to the effect that in October or November, 1899, they applied to Moses, who was then an officer of the bank, for a loan to be used in this mail business, and informed him that they wanted the money for their individual use. Such evidence was inadmissible, because the transaction out of which the notes in suit grew, did not take place until three or four months after that conversation, and after Moses had severed his connection with the bank, and such statement made to Moses would not bind the bank and the notice to Moses as to who wanted the money could not be imputed to the bank. (7) This case should be reversed and remanded for a new trial because of the improper remarks by the witness and defendant Franklin to Kingsley, in the hearing and in the presence of the jury in the jury room.

*Barnett & Barnett* and *Charles E. Yeater* for respondents.

(1) The case of Bates v. Forcht, 89 Mo. 126, cited by appellant, is applicable to a commercial or trading firm, and hence the testimony in the case at bar that there was no such agreement and that the agreement was to the contrary is competent, and such a ruling has been made by the Supreme Court based on the written articles of co-partnership of a non-trading firm. Deardorf v. Thacher, 78 Mo. 133; Webb v. Allington, 23 Mo. App. 568; Randall v. Lee, 68 Mo. App. 565; Stavnow v. Kene-

fick, 79 Mo. App. 44. (2) The sixth instruction was properly refused, because it does not state the law relative to non-trading firms, and because under the undisputed evidence defendant Beedy repudiated any responsibility on the notes in question as soon as he learned that the bank sought to hold him. (3) Plaintiff's seventh instruction submitting to the jury the question whether the star route mail business in controversy was that of a trading or non-trading firm was properly refused because, under the pleadings and the undisputed evidence and the law as stated in the first paragraph of such seventh instruction, it was that of a non-trading firm, and it was the province of the court and not of a jury to determine such legal proposition. Carroll v. Campbell, 110 Mo. 571; Cockrell v. McIntyre, 161 Mo. 67; Carter-Montgomerie & Co. v. Steele, 83 Mo. App. 215. (4) That this was a non-trading firm and therefore only the law applicable to such co-partnership should have been given to the jury, does not under the authorities admit of a doubt. Authorities, supra; Bank v. Snyder, 10 Mo. App. 211; Bank v. Noyes, 62 N. H. 35; Harris v. Baltimore (Md.) 20 At. Rep. 111; 17 Am. and Eng. Ency. Law (1 Ed.), p. 887, and authorities cited under note 2. (5) The plaintiff's eighth instruction was properly refused. Cases supra. (6) The giving of defendant's third instruction is correct, as a partnership cannot be established against one person by declarations of another charged to be his partner. Campbell v. Dent, 54 Mo. 330; Dowzelot v. Rawlings, 58 Mo. 77; Peery v. Moore, 24 Mo. 287; Roth v. Kirchoff, 12 Mo. App. 599; Huyssen v. Lawson, 90 Mo. App. 86. (7) There is no inconsistency whatever between the defendant's seventh and eighth instructions and each correctly announce the law. (8) The evidence of D. A. and J. A. Fults, with respect to their conversations with Moses about extending loans for the mail business is competent, inasmuch as the negotiations therefor was a continued transaction with both Moses and Latimer while

both were connected with the bank, and terminated with Latimer. (9) The alleged remarks of Franklin to Kingsley, made October 10th, three days before the case was submitted to the jury, are unimportant and inconsequential and not a statement of any controverted fact, but a mere conclusion, and the court correctly refused to grant a new trial on such grounds, and no reason exists for interfering with the discretion of the trial court, moreover, the jury heard Franklin afterwards afterwards testify under oath, which testimony was of no importance in the case. Fendlar v. Dewald, 14 Mo. App. 60; Kennedy v. Holladay, 105 Mo. 24.

ELLISON, J.—This action is based on a petition containing eight counts, each on a separate promissory note for borrowed money, and a ninth count on an overdraft. The judgment in the trial court was for the defendant Beedy and against the other defendants on each of the counts.

The notes are signed, D. A. Fults & Co., J. A. Fults, D. A. Fults and J. D. Franklin. Defendant Beedy is sought to be held on the ground that he was a member of the partnership of D. A. Fults & Co. The only contest here is as to his liability. The business of the partnership of D. A. Fults & Co. was contracting with the federal government for transportation of the mail over certain mail routes. One of the Fults bid for such contracts and, after securing same, would frequently sublet to others. The defendants, including Beedy, became interested in these and divided the profits, though Beedy does not admit himself to have been a partner as charged. We shall, however, assume that he was a partner. It is clear from the business of the firm and the evidence heard that it was what is known as a non-trading partnership. The trial court properly so declared in an instruction.

It is determined as law that partners in a non-trading firm have no implied power to bind one another by

commercial paper executed in the name of the firm. To make such paper binding, the party seeking to hold other members must show, either previous authorization, or subsequent ratification. [Deardorf v. Thacher, 78 Mo. 128; Webb v. Allington, 27 Mo. App. 559; Randall v. Lee, 68 Mo. App. 565; Stavnow v. Kenefick, 79 Mo. App. 44.]

But plaintiff complains of the action of the court on the instructions given and refused. The instructions given at plaintiff's instance were quite complete and full in the advancement of its theory of the case. The jury were told in the second instruction to find for plaintiff if it was usual and customary "in similar partnerships to execute notes for money." There was evidence tending to show that defendant Beedy, after becoming aware of the existence of the notes, admitted and acknowledged to defendant his liability. This he denied and the issue of fact thus made was directly submitted for the jury to determine. There were one or more instructions offered by plaintiff substantially on the same theory, which were refused, but we entertain no doubt that the jury were in this respect sufficiently advised as to the law and the proper finding thereunder. The instructions for defendant were tantamount to a direction to find for plaintiff if any of the theories advanced by the latter were believed. The instructions, as an entirety, leave no possible room to doubt that the jury was properly and fully instructed on all phases of the case as put by the plaintiff.

There is no contradiction, as suggested by plaintiff, between defendant's seventh and eighth instructions. The seventh informs the jury that, although they should believe that there was a firm of D. A. Fults & Co. and that defendant was a member of the firm, yet they could not find for plaintiff unless the notes were given for purposes within the scope of the partnership business, or unless they were authorized by defendant. The eighth was based on the hypothesis submitted that, if there was

no such firm or partnership under the name of "D. A. Fults & Co." (the name signed to the notes), then there could be no verdict against defendant Beedy, though he was a member of a partnership composed of himself and the other defendants, unless he, in some way, consented to, or knew of the use of such firm name as an obligor on such notes.

The instructions as a whole were to the following effect: That the partnership was a non-trading partnership. That prima facie, defendant was not bound by a note given for borrowed money. That to render defendant liable he must have authorized or ratified the giving of the notes. This latter proposition was put to the jury in several ways; that is, that he would be bound, if he knew that Fults was using the name of the partnership of which he was a member, and made no objection, or that, if he was told of the notes by defendant and admitted his liability, etc.

It is stated to be the law in Deardorf v. Thacher, supra, that, if the execution of promissory notes is usual in similar partnerships, the partners not signing will be liable, notwithstanding it is a non-trading partnership. In this case it was shown that there were other partnerships in the mail-carrying business in Sedalia and vicinity; and that they executed notes for borrowed money. But in each instance it appeared that the notes were also signed by the individual members of the partnership, while here it is not pretended that defendant Beedy had any personal connection with the notes in suit. So, therefore, it is apparent that, if Beedy is to be held by reason of usage, it must be the same usage. The usage shown to prevail here was a usage which secured the personal consent of the members, and it therefore should not have found place in this controversy as it did in the instructions given. But as this was an error in plaintiff's interest, no complaint can properly be heard on that head.

Objection is made to the refusal of plaintiff's

eighth instruction. It did not state the law as to a non-trading partnership. Even if defendant and the other members of the firm authorized D. A. Fults "to act as managing partner with full power and authority to conduct the firm's business;" it did not authorize the signing of notes, since such acts are not within the scope of the business of such partnership. Furthermore, it is very questionable whether it does not so read as to convey the idea that defendant would be bound by the authority given to D. A. Fults "by the other members of the firm." But, be that as it may, it was substantially given in plaintiff's second instruction. As before stated, we do not believe the jury lacked any instruction on the theories advanced by plaintiff as a reason for its recovery.

We consider the court's withdrawal of the evidence heard as to what D. A. Fults told plaintiff's officers as to defendant being a partner, was proper, since it was mere hearsay.

We also consider the court's ruling correct in admitting evidence of conversations between D. A. and J. A. Fults and plaintiff's cashiers prior to the execution of the notes in controversy, wherein they told those officers that they intended putting in bids for the mail service, but wanted first to know if they and Franklin (no mention of defendant) could get money. These conversations, as expressed by a witness, were a part of the negotiations for the money afterwards borrowed and for which these notes were executed. And it makes no difference that a part of them were had with plaintiff's cashier who vacated before the money was borrowed, and a part with the cashier in office when it was borrowed.

The motion for a new trial complained of an expression by one of the defendants to a witness, in the presence of some of the members of the jury, that defendant Beedy ought not to pay the notes in controversy.

115 app—4

It was not shown to have been a remark made for an improper purpose, or in any way to influence the jury, or by any design. We feel without authority to disturb the discretion of the trial court in refusing to grant a new trial on that ground. [Kennedy v. Holladay, 105 Mo. 24; Fendler v. DeWald, 14 Mo. App. 60.]

We do not believe that any substantial error materially affecting the merits of the case was committed and, hence, affirm the judgment. All concur.